Bissell, J.,
delivered the opinion of the court.
The ancient writ of mandamus has been used to accomplish many beneficent purposes, and its use is exemplified in many and various ways, but in none that I have observed has its original prerogative nature been sought to be applied to such novel uses as in the present proceeding. This may be accurately described as one brought to compel a justice of the peace to live and have his office on a particular side of an imaginary line.
*269 The petition on which the relator rested his rights substantially recited his citizenship and residence in what was formerly known as “Justice Precinct No. 6.” His rights, if any, are derived from the fact of that citizenship and residence, and from the official position and public duties of the plaintiff in error, which flowed from his election as a justice in that particular precinct.
At an election antecedent to the commencement of the proceedings, Chapman was elected justice of the peace in justice precinct No. 6. This justice precinct was composed of various election precincts in the county of Arapahoe, and, at the time of Chapman’s election, included within its boundaries some parts of Highlands, Yalverde, Barnum, and Colfax. Afterwards, by proceedings under a permissive statute, and as the result of an election held thereunder, Highlands became a part of the city of Denver, which is entirely located in Arapahoe county.
Subsequent to this annexation, the board of county commissioners, acting under the authority of two statutes,—one the act of 1883, found in the Session Laws of that year, at page 121, and under another act, passed in 1891, and found in the Session Laws of that year, at page 116,—altered the boundaries of the original justice precinct No. 6, consolidated it with precinct No. 2, and thereby reduced the number of precincts in the city of Denver, enlarged the, boundaries of precinct No. 2, and limited, by the resolution which was adopted, the number of justices which should thereafter exercise the functions of that office within the newly created precinct. The board of supervisors undertook, by their resolution, to somewhat legislate respecting this change in particulars over which, according to the statutes, they had no legislative jurisdiction. The resolution provided that their action and resolution should not in any way extend the territorial limits of the present incumbents holding the office of justice, but that their territorial jurisdiction should remain the same as it had theretofore been during their term of office. This part of the resolution may be rejected as of no avail in *270 the present discussion, because the jurisdiction or authority of the justice is in no measure dependent on the action of the board of supervisors when he has once been elected to office, but is entirely controlled by the constitution of the state and the statutes which have been passed thereunder.
After the passage of this resolution, Chapman moved his office from the north side of the Platte (where he had theretofore been, and probably was compellable to be, under the statutes) to the south side of the river, and into the more populous part of Denver. He opened up an office on Larimer street, and proceeded to do business. Thereupon the relator filed his petition, whereby he sought simply a writ commanding Chapman, at such time as the court might specify, to remove his office from Larimer street to the territorial limits of the former justice precinct No. 6, and there maintain it. This was the only relief sought, and the petition has been substantially stated.
It will be observed the relator made no statement in his application that he had commenced a suit, or that he was a present or prospective litigant before Chapman, nor that the justice had refused in any wise to perform any official functions with which he was invested by virtue of his office. The relator’s only right, if any, was derivable from the fact that he was a citizen and a taxpayer and lived within the former precinct No. 6, and inferentially, of course, might, as a citizen, desire to bring some suit before that magistrate.
We are very clearly of the opinion mandamus will not lie to compel the justice to do the thing prayed for by the petitioner. The right of a citizen to file a petition for this writ to compel the performance of a duty on the part of a public officer in which the public generally are interested, and the petitioner only as a part of the general public, is well recognized and settled in many cases. The duty, however, the performance of which is sought to be enforced, must be a duty which the officer is obligated to perform in the discharge of the functions of his office. The writ can never be invoked for the purposes of determining the powers and *271 duties of officers, unless in some way the rights or interests of the relator are involved or have been jeopardized. It can never be invoked for the purpose of compelling an officer to accept office, nor, so far as we know, to prevent him doing those things which amount to a vacation of his office.
If it happens that the justice be without jurisdiction, by reason of his removal to Larimer street, to hear and try any case which may be brought before him, the parties in interest may, by proper proceedings, undoubtedly restrain him from exercising his judicial functions. So, likewise, if, being a justice, and occupying the office, he should refuse, on the application of a litigant, to do those things which the litigant had a right to call on him to perform, that litigant might, by this or some other writ, enforce the performance of his official duties. On what theory a citizen can insist that a justice shall have his office or residence in a particular place, or on one side of an imaginary line, we are wholly unable to conceive. We know of no writ which can be invoked to compel an American citizen to live or have his office at other than the place of his choice. There may be enforceable penalties in case of refusal, but it takes czar or king to fix a residence for a subject, If, according to the terms of the statute, the official residence and office of the justice must be as contended by the relator, then, possibly, his attempted performance of his duties elsewhere, and the refusal to maintain his office in the proper place, might possibly result in the vacation of his office. If this be so, the question could be determined by proper proceedings, or, possibly, the question could be raised by some litigant who had been injuriously affected by the acts of the justice in some one of the many ways provided to raise and litigate such matters. High on Extr. Legal Rem. (3d ed.), part 1, chap. 2.
The fundamental trouble with the proceeding, it seems to us, arises from the misconception of the history and status of the office of justice of the peace and the legislation respecting it. Under the constitution, the justice is undoubtedly a constitutional officer. Article 14, sec. 11; article 6, sec. 29. *272 By these provisions, a justice, when once elected, holds his office, not at the will of the people -or of any person, but, having been elected, his term of office can neither be abridged nor lengthened unless, by reason of some violation of duty, he subjects himself to other penalties subscribed by the law. At the outset, then, Chapman having been duly elected as justice, he was entitled to hold his office during the term for which he was elected; and the board of county commissioners or legislature could neither by abridging his precinct, enlarging or restricting its boundaries, or altering the limits of townships, legislate him out of office. That office he holds for the period for which he was elected.
The only question actually involved is, therefore, one we have no right to determine, under the views which we have expressed. For these reasons, the judgment overruling the demurrer, and ordering the peremptory writ, will be reversed, and the matter returned for a dismissal of the petition.

Reversed.